IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-CV-0328-MSK

JULIE ANNE LANOUE,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

**OPINION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 23**), the Defendant's Response (**# 25**), and the Plaintiff's Reply (**# 26**). For the following reasons, the Commissioner's decision is affirmed.

## I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II. BACKGROUND

**A. Procedural History**

Julie Lanoue seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB) under the Social Security Act. In October 2014, Ms. Lanoue filed for DIB, claiming she became disabled in August 2011. Tr. at 136–37. The date that she was last insured for DIB was September 30, 2014. Tr. at 30. Her application was denied at all administrative levels and she now appeals to this Court pursuant to 42 U.S.C. §

405(g).

**B.     The Hearing**

At the time of her alleged onset of disability, Ms. Lanoue was 41 years old.    Tr. at 136. She was previously employed as a cashier, paper deliverer, and sales stocker.    Tr. at 150, 182. The Administrative Law Judge (ALJ) conducted a hearing on October 26, 2016.    Tr. at 40. After the initial formalities, the ALJ told Ms. Lanoue's counsel to "go ahead and develop your client's testimony for the record".    Tr. at 43.    Counsel asked Ms. Lanoue about her impairments, medications, and activities of daily living.    Tr. at 43–54.    The ALJ interrupted at one point to clarify whether counsel was asking about Ms. Lanoue's current limitations or limitations as of her date last insured.    Tr. at 49.    Counsel replied that the questions were about her current limitations.    Before finishing the hearing with a few questions for the vocational expert, the ALJ asked Ms. Lanoue two questions about whether she had a GED.    Tr. at 54–55.

**C.     The ALJ's Decision**

In January 2017, the ALJ issued an unfavorable decision to Ms. Lanoue.    Tr. at 28–35. At step one, the ALJ found that Ms. Lanoue had not engaged in substantial gainful activity from August 10, 2011, through her date last insured of September 30, 2014.    Tr. at 30.    At step two, the ALJ found that Ms. Lanoue had the following severe impairments: disc bulge of the thoracic spine, leukocytosis, and obesity.    Tr. at 30.    At step three, he found that Ms. Lanoue had no impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1.    Tr. at 32.    The ALJ found that Ms. Lanoue had the residual functional capacity (RFC) to perform the full range of light work.    Tr. at 33.    At step four, the ALJ found that Ms. Lanoue was unable to perform her past relevant work as a sales clerk and cashier.    Tr. at 35.    The ALJ did not make alternative findings at step five.

### III. STANDARD OF REVIEW

Though the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, but it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

### IV. DISCUSSION

Ms. Lanoue brings two challenges to the Commissioner's decision: (1) the ALJ failed to develop the record of impairments prior to her date last insured and (2) the ALJ failed to consider certain impairments at steps two and four. The Court affirms the decision.

**A. Failure to Develop the Record**

Because Social Security hearings are nonadversarial proceedings, "the ALJ has a basic duty of inquiry to inform himself about the facts relevant to his decision and to learn the claimant's own version of those facts." *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993). This duty persists even if the claimant is counseled. The length of the hearing is unimportant and the ALJ need not pursue every potential line of questioning — what matters is whether sufficient questions were asked "to ascertain (1) the nature of the claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id.*

Even viewed in a generous light, the hearing ended with only Ms. Lanoue's medications being conclusively established. *See* Tr. at 47–49. The nature of her impairments and their effect on her activities of daily living were only discussed in the present-tense and not as of her date last insured. The ALJ is entitled to rely on counsel's development of the record with regard to its contents; when counsel fails to ensure relevant medical evidence is a part of the record and does not alert the ALJ to its existence, the ALJ is not required to become the claimant's advocate. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). But the ALJ's obligations regarding the hearing under *Thompson* do not evaporate because counsel neglected to ask the right questions. Here, after letting counsel begin the questioning of Ms. Lanoue, the ALJ followed up with only two questions about her education. *See* Tr. at 54–55. In other words, the ALJ, with a full understanding of counsel's deficiency in questioning — he asked counsel whether the testimony was current or per the date last insured — made no attempt to find any facts as they were in September 2014.

Regardless, there is ample medical evidence in the record from which the ALJ was informed of the nature of Ms. Lanoue's impairments, her medications, and her daily activities as of the date that she was last insured. The nature of her impairments in the months leading up to her date last insured are memorialized in a large number of treatment notes throughout the record. *See, e.g.*, Tr. at 233, 235 – 36, 239, 242, 248, 252, 260, 264, 268, 298, 311. The same is true for medications — most of the treatment notes provide a snapshot in time of what medications Ms. Lanoue was taking before September 2014. *See, e.g.*, Tr. at 232, 235, 238, 241, 248, 260, 264, 269, 298, 308. And the ALJ accepted Ms. Lanoue's testimony about her current activities of daily living, which have become progressively more restricted since her date last insured. *See* Tr. at 34. Thus, to the extent that the ALJ erred by failing to elicit

4

temporally appropriate testimony at the hearing, such error was harmless.

**B.     Errors at Steps Two and Four[1]**

Not all maladies are impairments.   An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. § 404.1508.   At step two, the claimant must make a *de minimis* showing that, regardless of age, education, and RFC, her impairment(s) is *severe*.   *See* 20 C.F.R. § 404.1520(a)(4)(ii).   The Tenth Circuit has stated that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity."   *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997).

The severity inquiry at step two is different from the RFC determination at step four. Step two is basically a threshold check against frivolous disability claims.   *See Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir.1988).   As a result, when an ALJ finds one or more severe impairments but fails to find others, such error may have little impact on the ultimate disability determination.   *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).   The five-step process does not even contemplate a finding of disability at step two.   20 C.F.R. § 404.1520(a)(4)(ii).   Rather, an ALJ must consider the combined effect of all medically determinable impairments, severe or not, at step four.   *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).   Here, Ms. Lanoue argues that the ALJ failed to consider her headaches, sleep

---

[1]   It is not clear from Ms. Lanoue's Opening Brief whether she alleges the ALJ erred at step two or step four or both.   Because they are closely related, the Court assumes errors alleged at both stages.

apnea, imbalance, and obesity at step four.[2]

Substantial evidence supports the ALJ's findings at step two. Ms. Lanoue does not cite to any specific opinions, findings, or test results that support a 12-month-long impairment predating September 2014. With regard to her headaches, she cites either to record evidence memorializing her subjective complaints (Tr. at 231, 234, 240) or evidence postdating the date that she was last insured. She claims was error for the ALJ to ignore this latter evidence, but to the contrary, "the proffered evidence [must] relate to the time period for which the benefits were denied." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991). She also refers to an opinion from Dr. Kwasi Alzotor, but his opinion is dated February 2015 also subsequent to the date that she was last insured. It, too, repeats Ms. Lanoue's subjective complaints. *See* Tr. at 474.

With regard to her sleep apnea, the Court finds no evidence from the time that Ms. Lanoue was insured that mentions sleep apnea as a diagnosed condition. Ms. Lanoue sometimes refers to subjective complaints of fatigue. *See* Tr. at 240, 299, 345. But there is also evidence where she denied being fatigued. *See* Tr. at 269. As to imbalance or ataxia, it is not clear that this was an impairment before September 2014, but to the extent that it was, Ms. Lanoue refers only to subjective complaints. *See* Tr. at 322 (a report that concluded "no abnormalities"). Thus, substantial evidence supports the ALJ's conclusion that these impairments may not be medically determinable, much less severe.

As to the ALJ's analysis at step four, he was required to consider all medically determinable impairments, including those that were not severe. But his conclusion at step two

---

[2] Ms. Lanoue also includes pain among the impairments that the ALJ ignored, but in discussing pain in her brief, she connects it to the other impairments already either discussed by the ALJ or alleged to have been ignored. As a result, the Court will focus on the first four impairments in this line of argument.

6

regarding the headaches and sleep apnea was essentially that these conditions were not medically determinable — that is, they were not "established by medical evidence consisting of signs, symptoms, and laboratory findings" and were only attested to by Ms. Lanoue's "statement of symptoms." *See Lankford v. Colvin*, 612 F. App'x 496, 499 (10th Cir. 2015). In other words, the ALJ determined there was no evidence of any limitations caused by headaches or sleep apnea. Ms. Lanoue does not explain how the failure to repeat these findings at step four was error; to the extent it was, the Court finds it harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The ALJ found Ms. Lanoue's obesity a severe impairment, but she argues he failed to consider it at step four. Although the ALJ did not engage in a detailed discussion of Ms. Lanoue's obesity, he noted that she "demonstrated such unremarkable findings [regarding her gait and strength] in spite of her elevated weight as her BMI hovered around 32". Tr. at 34. Thus, it is clear that the ALJ considered her obesity in conjunction with her alleged impairments and abilities.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. Judgment shall enter in favor of the Commissioner.

Dated this 30th day of January, 2019.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge